IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 9:22-cr-00253-DCN |
| vs. | ) |
| | ) ORDER |
| XAVIER KASEEM CAPERS and JOSEPH | ) |
| BAILEY, JR., | ) |
| Defendants. | ) |
| | ) |

The following matter is before the court on defendant Xavier Kaseem Capers's ("Capers") motion to sever defendants, ECF No. 78. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

This prosecution arises out of alleged concerted activities by two correctional officers to traffic contraband, including methamphetamine, into Ridgeland Correctional Institute ("Ridgeland"), a facility run by the South Carolina Department of Corrections ("SCDC").[1]

On March 6, 2021, Capers checked into his job as a correctional officer at Ridgeland at 6:44 a.m. A typical day shift runs from 6:00 a.m. to 6:00 p.m., but records show that Capers would routinely check in after 6:00 a.m. and out after 7:00 p.m., and sometimes even after 8:00 p.m. Joseph Bailey ("Bailey") also worked at Ridgeland as a correctional officer and on March 6, 2021, he checked in at 6:17 p.m. for the night shift.

---

[1] The court draws its facts from the motion to sever defendants, ECF No. 78, and that motion's response in opposition, ECF No. 87, as well as from other pertinent documents filed in this prosecution, including, but not limited to the indictment, ECF No. 1, and the pretrial report, ECF No. 39. The court dispenses with citations in the recitation of facts as a result.

1

The day and night shifts at the prison routinely overlapped to prevent parts of the prison from being unattended during the change of shifts. On that day, Capers checked out at 7:29 p.m. Less than fifteen minutes later, Bailey could be seen on the prison camera system waiting by the front door. Two witnesses, Anita Harris and Onisha Mulligan, who at the time were SCDC correctional officers, told investigators that they saw Capers go into Bailey's vehicle and retrieve a backpack, and Capers himself admitted that he retrieved a backpack from Bailey's car and gave it to him outside the prison. See ECF No. 87-1. A camera captured a man (identified by other witnesses as Capers) walking toward the prison from the parking lot. At 7:41 p.m., the man handed Bailey a bag and another unidentified item. Bailey thereafter walked back towards the front door of the prison with the bag and appeared to place something on his face. At the same time, the man who delivered the bag turned and walked slowly back to the parking lot and the video cuts off at 7:43 p.m., before the man has reached his vehicle. The man who delivered the bag is not seen again on any other videos after this time.

      Bailey entered the prison with the bag. Upon entry, there was no one at the security area to screen him or the bag and he skipped all screening mechanisms on his way in.[2] Lt. Holyoka Williams was working the control center, which overlooked the security area, and she called Lt. James Williams to ask whether Bailey had a backpack with him when he was originally screened upon initial entry into the prison earlier that evening. Thereafter, Bailey walked through the open door into a sallyport area in the

---

[2] The security area has an x-ray machine that x-rays the person, it has an x-ray machine that is used for bags, and it has a walk-through metal detector. Bailey skipped all three screening mechanisms.

administration building and then into the yard. He was last seen with the bag, walking toward the dorm areas, at 7:44 p.m.

Since Bailey had not had a backpack with him, Lt. James Williams and Lt. Edward Mole went to Bailey's place of assignment and began to search for the bag that he was carrying. When asked for a key to open a door to an area only accessible to staff (called "the Horseshoe"), Bailey claimed that he did not have the key. After the officers asked Bailey to get the key at the administration building, Bailey proceeded to walk back out, without a bag. The video shows him back in the middle of the yard at 8:13 p.m. Upon reaching the control room in the administration building, Bailey allegedly turned in keys and left the prison entirely at approximately 8:15 p.m., almost ten hours before his shift was supposed to end.

When the investigating officers realized that Bailey had left, they proceeded to get the key needed to open the Horseshoe. In one of the rooms off the Horseshoe, the officers found a black mesh bag. Inside the bag were seventy-four individual serving-size packets of Crystal Light. See ECF No. 87-2. When the officers opened one of the packets, they discovered tobacco, which is contraband in a prison. When other packets were opened, officers discovered that several were filled with a pink crystalline powder, and several were filled with a blue crystalline powder. Both powders tested presumptive for methamphetamine, which was later confirmed by lab analysis.[3]

After Capers was read his Miranda rights and signed a form which documented that he understood them, police officers confronted Capers with the allegation that he

---

[3] Specifically, investigators ultimately located the following: approximate 373.7 grams of methamphetamine testing to be 97% pure; approximately 35.43 grams of methamphetamine testing to be 9% pure; and approximately 368 grams of tobacco.

assisted Bailey. Capers denied knowing anything about the drugs. He told the arresting officer that Bailey asked him to get his bag and glasses for him so that Bailey would not have to walk all the way out to his car.

On March 23, 2022, the grand jury returned a two-count indictment alleging: (1) a drug distribution conspiracy in violation of 21 U.S.C. § 846 and (2) possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. ECF No. 1. On April 7, 2022, Capers pleaded not guilty. ECF No. 18. On June 8, 2023, Capers filed a motion to sever defendants. ECF No. 78. The government responded on June 13, 2023, ECF No. 87. The court held a hearing on this motion on June 14, 2023. ECF No. 95. As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Federal Rule of Criminal Procedure 14 provides relief to defendants from prejudicial joinder. The rule states that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "To succeed, the defendant[] must overcome the 'preference in the federal system for joint trials of defendants who are indicted together.'" United States v. Chavez, 894 F.3d 593, 605 (4th Cir. 2018) (quoting Zafiro v. United States, 506 U.S. 534, 537 (1993)). This preference is rooted in the fact that joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" Id. (quoting Zafiro, 506 U.S. at 534 (internal citation omitted)). "These interests are so substantial that courts

4

have reversed relatively few convictions for failure to grant a severance and the Supreme Court repeatedly has approved of joint trials." Id. (cleaned up).

However, severance is warranted when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilty or innocence." Zafiro, 506 U.S. at 539. "[A] defendant is not entitled to severance merely because separate trials would more likely result in acquittal, or because the evidence against one defendant is not as strong as that against the other." United States v. Shealey, 641 F.3d 627, 633 (4th Cir. 2011) (quoting United States v. Strickland, 245 F.3d 368, 384 (4th Cir. 2001) (internal quotation marks and citation omitted)). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." Zafiro, 506 U.S. at 541.

### III.   DISCUSSION

Capers explains that the defendants should be severed because "[t]here is an extremely large disparity in evidence between the two defendants in this case." ECF No. 78 at 4. He emphasizes that "[t]he major concern in this trial is that the jury may allow the evidence against Bailey to 'spillover' with respect to Capers." Id. at 5. To illustrate that point, he highlights four areas of concern. Id. at 4–5. "First, there is no explicit evidence of any agreement between the two men or anyone else," which undermines the government's claim of a conspiracy. Id. at 4. "Second, there is no explicit evidence that Capers had any knowledge of what was in the bag," which undermines the government's claim that "Capers knowingly possessed with intent to distribute drugs or aided and abetted Bailey in doing so." Id. "Third, a joint trial will admit evidence that is

5

admissible only against Bailey," namely, evidence of "Bailey's actions after leaving Capers, alleged statements, and alleged flight" from the prison.[4] Id. "Fourth, the evidence disparity is so drastic that it is likely that the jury would have the inability to separate out the evidence against the two defendants." Id. at 4–5. Finally, Capers highlights that he has no information as to whether "Bailey would take the stand and blame Capers." Id. at 5. As such, Capers requests the court grant a severance to protect his right to a fair trial. Id.

The government emphasizes that Capers is charged with conspiring with and aiding and abetting his co-conspirator Bailey in the possession of methamphetamine with the intent to distribute. ECF No. 87 at 12. The two charges stem from the same transaction and the exact same set of facts. Id. Initially, the government highlights that precedent is clear: "no right to severance exists simply because the evidence against one defendant is stronger or more inflammatory than the evidence against the other defendants." Id. at 13. Moreover, the government emphasizes that the evidence of Bailey's actions after receiving the bag from Capers "is essential to proving intent to distribute, because there is no other reason for a correction officer to bring . . . methamphetamine into a prison." Id. Thus, those actions are relevant and "[t]here is hardly a doubt that Bailey's actions after leaving Capers would be admissible in a separate trial." Id. Finally, the government argues that Capers's hypothetical argument that "Bailey would take the stand and blame Capers" fails to show actual

---

[4] At the hearing on June 14, 2023, Capers's attorney agreed that even if the motion to sever were granted, most of this evidence would still be admissible. ECF No. 95.

irreconcilable antagonism between Capers's defense and Bailey's defense. Id. at 14. As such, the government argues that the court should deny the motion.

The court starts with the general principle that "when defendants are indicted together, they should be tried together." United States v. Singh, 518 F.3d 236, 255 (4th Cir. 2008). "Joint trials are more efficient, and 'generally serve the interests of justice by avoiding the . . . inequity of inconsistent verdicts.'" United States v. Dinkins, 691 F.3d 358, 368 (4th Cir. 2012). "Therefore, when an indictment properly has joined two or more defendants under the provisions of Rule 8(b), severance pursuant to Rule 14 is rarely granted." Id. The Fourth Circuit has repeatedly noted that "a defendant is not entitled to severance merely because he might have [] a better chance of acquittal in a separate trial." United States v. Cannady, 924 F.3d 94, 103 (4th Cir. 2019) (quoting United States v. Lighty, 616 F.3d 321, 348 (4th Cir. 2010)). "Joinder is highly favored in conspiracy cases, over and above the general disposition supporting joinder for reasons of efficiency and judicial economy." Dinkins, 691 F.3d at 368. (internal citations omitted and alterations adopted). Moreover, "severance generally is granted only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" Id. (quoting Zafiro, 506 U.S. at 539). Finally, the court must evaluate whether "any risk of prejudice . . . can be minimized by measures less drastic than severance, including limiting instructions given by the district court when certain evidence [is] admitted against one or more, but not all, defendants." United States v. Stencil, 859 F. App'x 654, 660 (4th Cir. 2021) (quoting Dinkins, 691 F.3d at 368).

7

The court first considers Capers's evidentiary arguments, comprising of his first four arguments, before turning to the fifth and final argument of a hypothetical antagonistic defense. Ultimately the court finds that none of Capers's arguments are sufficient to warrant granting his motion to sever.

**A. Evidentiary Arguments**

A defendant articulates a theory that qualifies as an irreconcilable defense sufficient to warrant severance if he demonstrates that there would be evidence admitted against his co-defendants that would be inadmissible against him and the spillover effect of the evidence would prejudice him. See United States v. Najjar, 300 F.3d 466, 473 (4th Cir. 2002). As the Fourth Circuit has explained, cautionary language in limiting instructions "substantially mitigate[s] . . . any possible spillover of prejudicial evidence." United States v. Campbell, 963 F.3d 309, 319 (4th Cir. 2020) (quoting United States v. Blair, 661 F.3d 755, 769–70 (4th Cir. 2011)), cert. denied sub nom., Washington v. United States, 141 S. Ct. 927 (2020). Similarly, if the evidence would be admissible in separate trials, that too greatly diminishes any prejudice. Id.; see also United States v. Devine, 40 F.4th 139, 150 (4th Cir. 2022) (concluding that the district court did not abuse its discretion by denying the appellant's motion to sever given that it found that most of the contested spillover evidence was independently admissible against appellant and that "[a]ny remaining possibility of prejudice was cured by the district court's use of limiting instructions, which [the Fourth Circuit] ha[s] held are generally sufficient to address any spillover risk").

Capers's first and second arguments go to the weight of the evidence presented by the government. He argues that "there is no explicit evidence of any agreement between

8

the two men or anyone else," nor is there any "explicit evidence that Capers had any knowledge of what was in the bag." ECF No. 78 at 4. Similarly, Capers's fourth argument focuses on the evidence disparity between Bailey and Capers, saying it is "so drastic that it is likely that the jury would have the inability to separate out the evidence against the two defendants." Id. at 4–5. However, the Fourth Circuit has repeatedly noted that "a defendant is not entitled to severance merely because he might have [] a better chance of acquittal in a separate trial." Cannady, 924 F.3d at 103 (quoting Lighty, 616 F.3d at 348). In other words, "it is not enough to simply show that joinder makes for a more difficult defense." United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984). Capers's first and second arguments challenging the sufficiency of the government's evidence therefore do not merit the granting of his motion to sever. Similarly, Capers's fourth argument, which focuses on the disparity of evidence, is without merit because the Fourth Circuit has clearly held that severance is not required merely because "some of the evidence concerning [his] codefendant[] [i]s not favorable to [Capers]." Singh, 518 F.3d at 255. As the court has already noted, "[t]he Supreme Court has recognized a strong preference for trying defendants who are indicted together in joint trials." Lighty, 616 F.3d at 350. The circumstances where a motion to sever should be granted are narrow. Capers's first, second, and fourth arguments do not constitute circumstances requiring a court to grant the drastic measure of a motion to sever.

Capers's third argument is that "the evidence of Bailey's actions after leaving Capers, alleged statements, and alleged flight are not admissible as against Capers," because "[t]hey are not relevant to show any element of the crimes as against Capers."

ECF No. 78 at 4. Capers does not specify which "alleged statements" he references; therefore, it is impossible for the court to judge the admissibility of Bailey's unknown statements without more. See id. Capers provides no legal citations to support his argument, nor does he reference the Federal Rules of Evidence. Id. As such, the court considers the relevance of Bailey's actions after leaving Capers and the relevance and admissibility of Bailey's flight if brought in against Capers.

Capers is charged with two counts: (1) drug distribution conspiracy and (2) possession with intent to distribute fifty grams or more of methamphetamine. ECF No. 3. "To convict a person of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1), 'the government must prove: (1) possession of a narcotic controlled substance; (2) knowledge of the possession; and (3) the intent to distribute.'" United States v. Campbell, 851 F. App'x 370, 375 (4th Cir. 2021) (quoting United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005)). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal Rule of Evidence 402 specifies, "relevant evidence is admissible" unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise.

First, the court considers Bailey's actions after leaving Capers. The fact that Bailey carried a backpack he received from Capers into the Horseshoe, which is close to the prisoner dorms, and the fact that the backpack had seventy-four packets of methamphetamine and tobacco disguised as Crystal Light makes it more probable that Capers had an intent to distribute, meaning, it is relevant to an element of the charged

offense. Capers has provided no reason that Bailey's actions are inadmissible, merely asserting that the challenged evidence is inadmissible as irrelevant. Because the court finds that the challenged evidence is likely relevant and therefore admissible even if the court were to grant the motion to sever, that conclusion weighs in favor of denying the motion. See Campbell, 963 F.3d at 319.

Second, the court considers Bailey's flight. The fact that Bailey left the prison after fellow correctional officers began to investigate the backpack he had received from Capers tends to make Bailey's knowledge of the possession of contraband more probable. Thus, that evidence is clearly relevant to the government's prosecution of Bailey. Admittedly, it is debatable whether Bailey's flight also tends to show Capers's subjective knowledge of the drugs in the backpack. As Capers claims, he could have unknowingly assisted Bailey by grabbing a backpack out of Bailey's car without subjective knowledge of the backpack's contents. See ECF No. 78 at 3. However, even if Bailey's flight were inadmissible at trial as brought against Capers, the court finds that limiting instructions can likely cure any remaining possibility of prejudice if the government seeks to admit evidence of Bailey's flight as against Bailey.[5] See Devine, 40 F.4th at 150 (affirming the use of limiting instructions to cure "any remaining possibility of prejudice").

As such, Capers's evidentiary argument does not reach the threshold of an irreconcilable defense. See Najjar, 300 F.3d at 473. Finding that Capers's first four arguments do not weigh in favor of granting the motion to sever, the court turns to his fifth and final argument of a potential antagonistic defense.

---

[5] If the parties wish to provide the court with proposed limiting instructions, please file them and send them via email to the other parties and the court by noon on June 19, 2023.

11

### B. Antagonistic Defense

"Hostility among defendants, and even a defendant's desire to exculpate himself by inculpating others, do not of themselves qualify as sufficient grounds to require separate trials." Dinkins, 691 F.3d at 369. "The antagonistic defenses must involve more than finger pointing." Stencil, 859 F. App'x at 660 (quoting Lighty, 616 F.3d at 348). "[A]ntagonistic defenses necessitate severance only if there is 'such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other, or that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" Chavez, 894 F.3d at 606 (quoting Lighty, 616 F.3d at 348 (internal quotations omitted and alterations adopted)).

The government is correct; the hypothetical possibility "that Bailey would take the stand and blame Capers," as asserted by Capers, does not rise to the level necessary to require severance. ECF No. 87 at 14 (quoting ECF No. 78 at 5). Nobody knows if Bailey will testify, which means that nobody can clearly determine "that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other, or that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." Chavez, 894 F.3d at 606. Without more, the court cannot grant the motion to sever based on Capers's argument of a possible antagonistic defense.

### IV.  CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to sever defendants.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**June 15, 2023
Charleston, South Carolina**